**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

AHMAD HERSH, et al.,                           )
                                               )
                Plaintiffs,                    )
                                               )
        v.                                     )     Case No. 4:17-cv-02043-AGF
                                               )
CKE RESTAURANT HOLDINGS,                       )
INC., et al.,                                  )
                                               )
                Defendants.                    )

## MEMORANDUM AND ORDER DETERMINING CHOICE OF LAW

This lawsuit stems from the tragic death of Plaintiffs' minor child, I.E. Hersh, at a

Hardee's restaurant in Amman, Jordan.  The child died after he touched an exposed,

electrified wire while playing on the restaurant's indoor playground.  The restaurant was

owned by Tourism Projects and International Restaurants Company ("Tourism

Projects"), a Hardee's franchisee in Jordan.

Plaintiffs filed suit in this Court against Defendants CKE Restaurants Holding,

Inc., the parent holding company for Hardee's franchised restaurant brands; Hardee's

Food Systems, LLC, the licensor for Hardee's franchise restaurants; and Hardee's

Restaurants, LLC, the franchisor for Hardee's restaurants.  Invoking the Court's diversity

jurisdiction, Plaintiffs assert three claims: "wrongful death – negligence" based on

theories of respondeat superior and negligent supervision (Count I), "wrongful death –

negligence – apparent agency" based on a theory of the restaurant's apparent authority to

act on behalf of Defendants (Count II), and "wrongful death – strict liability for breach of

1

warranty" based on Defendants placing a defective and unreasonably dangerous product (the playground equipment) into the stream of commerce (Count III).  In all three counts, Plaintiffs allege that the play structure on which their child was playing was defective and that the Defendants designed the defective structure or otherwise breached their duty to properly inspect the structure and discover and remedy the defect.[1]

Because the alleged conduct giving rise to the claims in this case took place in both Jordan and Missouri, the Court ordered Plaintiffs to file a motion for determination of the choice of law.[2]  Plaintiffs contend that no actual conflict exists between the substantive law of Missouri and the substantive law of Jordan and, therefore, Missouri law should apply to all issues. Defendants contend that numerous conflicts exist between Missouri and Jordanian law, and that under Missouri's "most-significant-relationship" test, the law of Jordan applies to all issues.

For the reasons stated below, this Court finds that with respect to Count I, no conflict exists between the laws of Missouri and Jordan as to the issues of whether a cause of action for wrongful death exists, whether a decedent's parents are the proper parties to bring such an action, the elements of a wrongful death claim based on negligence, or the elements of vicarious liability based on theories of respondeat superior or negligent supervision.  Nor have the parties advised the Court of any conflict relating

---

[1]     Plaintiffs allege that Defendants should have repaired and issued warnings regarding the defect, or discontinued the restaurant's operation in light of the defect.

[2]     This order was part of the Amended Case Management Order (ECF No. 168) issued by the undersigned when the case was reassigned to her in July of 2021, following remand from the Eighth Circuit and the recusal of another judge of this Court.

to compensatory damages under Count I.  However, a conflict exists regarding punitive damages under Count I, and applying the most-significant-relationship test to this issue, the Court finds that Missouri law permitting punitive damages controls.

With respect to Counts II and III, a conflict exists between the laws of Missouri and Jordan regarding whether apparent authority or strict products liability are grounds for tort liability.  Applying the most-significant-relationship test to these issues, the Court finds that Jordanian law controls.  As Jordanian law does not recognize apparent authority or strict products liability as grounds for tort liability, Counts II and III may be subject to dismissal or judgment as a matter of law on an appropriate motion.

## LEGAL STANDARD

A federal court exercising its diversity jurisdiction applies the choice-of-law rules of the state in which it sits.  *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).  "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists."  *Id.*  Here, that question involves a determination of foreign law, which is a legal question that can be based on any relevant source, "whether or not submitted by a party and whether or not admissible under the Federal Rules of Evidence." *United States v. Matya*, 541 F.2d 741, 746 n.10 (8th Cir. 1976) (citing Fed. R. Civ. P. 44.1).  If no conflict exists, a choice-of-law analysis is not necessary.  *Kamrath*, 475 F.3d at 924.

If a conflict exists, Missouri follows the most-significant-relationship test as set forth in the Restatement (Second) of Conflict of Laws (hereafter "Restatement").  *See Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) (discussing

3

Missouri law); *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969).  Specifically, in tort actions, "[t]he rights and liabilities of the parties with respect to an issue . . . are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[3]  Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).

The most-significant-relationship test requires consideration of four factors: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered.   Restatement § 145.  The analysis is to be conducted "issue by issue," *Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992), evaluating the factors set forth above "according to their relative importance with respect to the particular issue." Restatement § 145.

---

[3]  Section 6 provides that, absent a statutory directive of the forum state on choice of law, the factors relevant are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. Law Inst. 1971).  However, only those factors implicated by the particular issue need be considered.  *See Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994).

## Count I ("Wrongful Death – Negligence")

a. **Existence of a Wrongful Death Action and Proper Person to Bring Suit**

In addressing the choice of law for Count I, both sides address whether a conflict exists between the laws of Missouri and Jordan as to the rules applicable to personal injury claims in general, rather than a wrongful death claim in particular.  But wrongful death claims in Missouri and elsewhere are distinct from common-law tort claims and are strictly a creature of statute.  *See Nelson v. Hall*, 684 S.W.2d 350, 354 (Mo. Ct. App. 1984) ("An action for wrongful death, therefore, accrues—if at all—only by a legislative enactment, and then as a new and different cause than that for the injury from which death resulted.").  The parties have not addressed whether a conflict exists as to the existence of a cause of action for wrongful death or the proper person to bring such a suit.

Nevertheless, there does not appear to be a conflict between the laws of Missouri and Jordan as to these issues.  Missouri undisputedly recognizes a cause of action for wrongful death and provides that a decedent's parents are proper parties to bring suit. *See* Mo. Rev. Stat. §§ 537.080-537.095 (Missouri wrongful death statute).

Defendants' brief indicates that the same is true in Jordan.  Defendants have attached to their brief the declaration of Bashar Malkawi, a Global Professor of Practice in Law at the University of Arizona, who earned his law degree and also taught legal courses in Jordan.  Malkawi states that Jordanian courts have awarded compensation to parents or other relatives due to the death of a child and cites to Jordanian caselaw in support of this proposition.  *See* ECF No. 174-1 at ¶¶ 46-48.  Malkawi also states that the damages awarded in such a lawsuit may include compensation for the parents' pain and

5

suffering due to the loss of the child.  *Id.*  Because no conflict exists, the Court need not engage in a choice-of-law analysis as to these issues.

### b. Liability

Plaintiffs also contend that there is no conflict regarding liability for wrongful death based on negligence.  Plaintiffs cite to the declaration of Jordanian attorney Yazid Salah, who explains that such claims are governed by Articles 256 and 274 of the Jordanian Civil Code and require proof of a breach of legal duty, proximate cause, and injury, the same elements required by Missouri common law.  ECF No. 170 at 5-8.

Defendants concede that "Jordan recognizes a cause of action for negligence," and Defendants do not dispute that the basic elements for such a cause of action (breach of duty, causation, and injury) are substantially equivalent to Missouri common law.  ECF No. 174 at 4.  Defendants' proffered expert, Malkawi, further indicates that Jordanian law, like Missouri law, recognizes vicarious liability based on respondeat superior or a principal's actual authority over its agent, as well as negligent supervision.  *See* ECF No. 174-1 at ¶¶ 34-35, 38.  The parties have not advised the Court of any conflict as to the elements required to establish vicarious liability in this regard.  Therefore, the Court will also assume that there is no conflict between Missouri and Jordanian law with respect to the issue of Defendants' liability under Count I.

### c. Damages Recoverable

Defendants assert, however, that substantive differences exist with respect to the type of damages recoverable in the two jurisdictions. Specifically, Defendants assert that contrary to Missouri law, Jordanian law allows for *diyat* or "blood money" damages.

6

Defendants also assert that Jordanian law does not provide for punitive damages in tort, while Missouri law does.

     i.    *Diyat* or "blood money"

With respect to *diyat* or "blood money," Defendants' expert, Malkawi, states that *diyat* "is one avenue through which the offender and the victim or the heir can resolve the dispute concerning wrongful death for instance." ECF No. 174-1 ¶ 52. Malkawi further states that *diyat* is "a type of financial compensation available under Jordan's tribal system" recognized as "another compensation which can be combined with" compensation provided by the Jordanian Civil Code. *Id.* Neither of these statements is relevant, however, to the issue of whether a Jordanian civil court has the authority, under the Jordanian Civil Code, to require a defendant to pay *diyat* to a plaintiff.

On the contrary, Malkawi's declaration supports the view, proffered by Plaintiffs' expert, that *diyat* exists *outside* of the framework of the Jordanian Civil Code. It is of no moment that parties in Jordan may decide, for settlement purposes or religious or cultural reasons, to negotiate a *diyat* payment, separate from a Jordanian civil court applying the Jordanian Civil Code to adjudicate the parties' dispute. Further, Plaintiffs do not seek *diyat* compensation in their prayer for relief. *See* ECF No. 21 at 23. Therefore, no conflict exists between the laws of Missouri and Jordan in the context of this case.

     ii.    Punitive damages

In their arguments on the issue of punitive damages, the parties again focus on Missouri law as it relates to personal injury claims. Nevertheless, the Court recognizes that under the Missouri wrongful death statute, a plaintiff may seek damages based on

"aggravating circumstances."  Mo. Rev. Stat. §§ 537.080, .090.  And the Missouri

Supreme Court has explained that aggravating circumstance damages in wrongful death

cases are the equivalent of punitive damages.  *Bennett v. Owens–Corning Fiberglas*

*Corp.*, 896 S.W.2d 464, 466 (Mo. 1995).

Plaintiffs do not address whether Jordanian law provides for punitive or

aggravating circumstances damages for wrongful death claims.  *See* ECF No. 170 at 9-10

(arguing that a choice of law analysis is not necessary because "the forum where the

plaintiff seeks relief supplies the law of damages")*.*  Defendants assert that Jordan's Civil

Code does not provide for punitive damages. ECF No. 174-1 at ¶¶ 49-51.  The Court's

examination of the Jordanian Civil Code and of legal treatises commenting on the Code

supports Defendants' view that punitive damages are not allowed under Jordanian law.

*See, e.g.,* Abdelnaser Zeyad Hayajneh, *The Awarding of Punitive Damage under the*

*Jordanian Civil Code: Is it Possible?*, 14 Eur. J. of Soc. Sci. 606, 606 (2010).

Thus, a conflict exists, and the Court must turn to Missouri's most-significant-

relationship test to determine which law to apply.  To recover punitive damages,

Plaintiffs must show that Missouri has the most significant relationship to this case on the

issue of such damages.  Plaintiffs have done so.

Section 178 of the Restatement applies to the choice of law for measuring

"damages in an action for wrongful death" and provides that the "law selected by

application of the rule of § 175" controls.  Section 175, in turn, applies to the choice of

law for wrongful death actions generally, and provides that "[i]n an action for wrongful

death, the local law of the state where the injury occurred determines the rights and

liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 . . . ."  Restatement § 175.

It is clear that the alleged wrongful death took place in Jordan.  Therefore, Jordanian law would apply unless, in light of the issue-by-issue analysis required under the Restatement, Missouri has a more significant relationship to the particular issue of punitive damages.

The purpose of Missouri's punitive damages scheme, as reflected in Missouri cases and in Missouri's wrongful death statute, "is to deter defendants who choose to locate in and operate from Missouri from engaging in tortious conduct."  *Leonard v. Air Evac EMS, Inc.*, No. 4:06CV202 CDP, 2006 WL 8459145 (E.D. Mo. Oct. 10, 2006); *see also Bradshaw v. Deming,* 837 S.W.2d 592, 594 (Mo. Ct. App. 1992) ("[P]unitive damages . . . have as their purpose, not the compensation of the plaintiff, but the punishment of the defendant and the deterrence of the offending conduct in the future."). Missouri thus has a strong interest in imposing punitive damages for the wrongful conduct of a corporation headquartered in Missouri; "[t]o find otherwise would be to gut the very concept of corporate accountability... [and] would encourage rampant subterfuge and confusion."  *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 613 (7th Cir. 1981) (discussing Missouri's interest in imposing punitive damages in the choice-of-law context).

Jordanian civil law, however, appears to be directed at full compensation of the "damage sustained by the victim, and absolutely not to punish the person liable." Abdelnaser Zeyad Hayajneh, *The Awarding of Punitive Damage under the Jordanian*

*Civil Code: Is it Possible?*, 14 Eur. J. of Soc. Sci. 606, 606 (2010).  Professor Hayajne of the University of Jordan Law School posits that Jordanian civil law developed with the general belief that "civil liability normally has no punitive function" which is "performed better by criminal law."  *Id.*

While Jordan's interest in this respect is more difficult to discern where (as here) the alleged wrongdoer is not a Jordanian citizen, the comments to the Restatement provide helpful guidance.  Restatement § 146, cmt. e[4] states in relevant part that the purpose of a tort rule providing the defendant "a special immunity" for his conduct "is presumably to encourage persons to engage in the particular conduct within the state. But [where] the defendant's conduct took place in another state[, the situation] might be thought not to come within the purpose of the rule of the state of injury."  Restatement § 146, cmt. e (1971)

By contrast, if the purpose of a tort rule "is to punish the tortfeasor and thus to deter others from following his example"—such as the case with Missouri's punitive damages rule—"there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control . . . ."  *Id.*  For this reason, many courts applying the most-significant-relationship test to the issue of punitive damages have found that the place where the conduct occurred controls.  *See,*

---

[4]     Although § 146 applies to personal injury claims, "the same principles control" selection of the law applicable to wrongful death.  *See* Restatement § 175, cmt. a.

*e.g.*, *In re NuvaRing® Prods. Liab. Litig.*, 957 F. Supp. 2d 1110, 1114-17 (E.D. Mo. 2013); *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 12-13 (D.D.C. 1995*)*.

The parties here dispute where the conduct causing the injury occurred.  No doubt a substantial part of the conduct took place in Jordan, where Plaintiffs' child encountered the playground equipment and where inspections of that equipment by Defendants allegedly should have been but were not conducted.  But part of the alleged wrongful conduct also took place in Missouri.  It is undisputed that Defendants' principal place of business at the relevant time was in Missouri.  Therefore, business decisions such as the design of franchise restaurants, whether to inspect franchise restaurants, and whether to enforce design or inspection standards—if such decisions occurred[5]—would have occurred in Missouri.

In this respect, the undersigned is guided by the decision of another judge of this Court in *Leonard v. Air Evac EMS, Inc.*, No. 4:06CV202 CDP, 2006 WL 8459145 (E.D. Mo. Oct. 10, 2006).  In *Leonard*, Judge Catherine D. Perry analyzed a conflict between the laws of Missouri, which allowed punitive damages for wrongful death claims, and Indiana, which did not.  Because the injury in that case occurred in Indiana and the decedent and survivors were domiciled there, Judge Perry applied Indiana law to the issue of compensatory damages.

---

[5]    Although Defendants dispute that they had any control or authority over the Jordanian restaurant here, the merits of Plaintiffs' claims in this respect are not before the Court at this stage.

But Judge Perry reached a different conclusion with respect to the issue of punitive damages, which "focuses on the culpable defendant, and is not intended to promote any interest the state may have with regard to an injured plaintiff." *Id.* at *5. Because the defendant principally operated in Missouri and allegedly made wrongful corporate decisions from there that contributed to the death, Judge Perry applied Missouri law to the issue of punitive damages. *Id.* at *6. She reasoned that, in light of the purpose of Missouri's punitive damages rule to deter Missouri corporations from engaging in tortious conduct, the issue of punitive damages represented the "rare case where another state's interests (Missouri's) can overcome the presumption that the law of the place of injury (Indiana) should apply." *Id.* at *7.

Applying these principles, it is not clear that the interests of Jordan would be furthered by prohibiting punitive damages as to alleged wrongful conduct resulting in the death of its citizens where the conduct occurred outside of its territory. By contrast, the interests of the state of Missouri to punish and deter the tortious conduct of its corporate citizens through the use of punitive damages persists regardless of where the ultimate injury occurs.

Consequently, with respect to Count I, the issue of punitive or aggravating circumstances damages will be adjudicated under Missouri law.

**d.  Remaining issues**

The parties have not addressed whether a conflict exists with respect to other rules applicable to wrongful death claims, such as any other categories of damages available under Missouri's wrongful death statute or any requirements for distribution of damages

among beneficiaries.[6]  If any conflict exists as to these or other remaining issues, the parties may bring the conflict to the Court's attention through an appropriate motion.

**Count II ("Wrongful Death – Negligence – Apparent Agency")**

Count II is virtually identical to Count I except that it relies on an alternative theory of vicarious liability, based on Defendants' apparent—rather than actual— authority over the Jordanian restaurant.  "Actual authority and apparent authority are two different theories on which an agency relationship may be based." *Aughenbaugh v. Williams*, 569 S.W.3d 514, 522 (Mo. Ct. App. 2018).  "Actual authority relates to the ***agent's*** understanding of the principal's intent to give power to the agent to act on the principal's behalf," and that understanding may be based on the principal's expressed intention or implied from the principal's conduct.  *Shiplet v. Copeland*, 450 S.W.3d 433, 443 (Mo. Ct. App. 2014) (emphasis in original).

"Apparent authority, on the other hand, relates to ***third persons'*** understanding of the principal's intent to give power to the agent to act on the principal's behalf." *Id.* (emphasis in original).  "Apparent authority exists where a principal, either by her acts or representations, leads third parties to believe that authority has been given to an agent." *Starr v. Jackson Cty. Prosecuting Att'y*, No. WD 83634, 2021 WL 4156322, at *4 (Mo. Ct. App. Sept. 14, 2021).

---

[6]     *See* Mo. Rev. Stat. §§ 537.090 (describing wrongful-death damages available under statute); 537.095 (describing apportionment of damages or settlement proceeds among beneficiaries).

In Count II, Plaintiffs allege that the following acts and displays by Defendants led them to reasonably believe that Defendants exercised the requisite authority over the Jordanian restaurant at issue: the Jordanian restaurant "displayed a Hardee's logo in front, used the Hardee's trademark or trade name, advertised as a Hardee's restaurant, and displayed distinctive architectural design, and décor"; "[t]he employees wore Hardee's uniforms"; and "[a]ll materials distributed by the restaurant . . . displayed the Hardee's logo."  ECF No. 21 at ¶ 57.

Missouri recognizes the concept of apparent authority, but the parties dispute whether Jordan does.  Plaintiffs assert that no difference exists between the laws of Missouri and Jordan on the theory of apparent authority of an agent and that, therefore, Missouri law should apply.  Defendants assert that Jordanian law has no such concept and that the Court should resolve the conflict of law in favor of applying Jordanian law.  Defendants' arguments are ultimately more persuasive.

Defendants rely on the declaration of Malkawi, who states: "The Jordanian Civil Code requires unequivocally 'actual authority' regardless of the contract between the parties or any other legal relationship." ECF No. 174-1 ¶ 35.  Malkawi further emphasizes this requirement for "actual authority" and not "apparent authority" in the plain reading of Article 288.  ECF No. 174-1 ¶¶ 34 and 36.  Malkawi relies on his translation of Article 288 of the Jordanian Civil Code, which states:

> No person shall be liable for the act of another, and yet the court may on the application of the injured person and if it finds justifiable hold liable for the awarded damages: . . . Any person who had actual power to supervise and direct the person who had inflicted the damage even though he himself had no free

choice if the injurious act was committed by the supervised person while or because of performing the duties of his position.

ECF No. 174-1 ¶ 31.  Plaintiff does not dispute this translation, which, as noted above with respect to Count I, largely parallels the common law concept of respondeat superior.[7]

Nevertheless, Plaintiffs contend that Jordanian courts "do in fact entertain the theories of apparent agency."  ECF No. 175 at 5.  Plaintiffs rely on the declaration of Jordanian attorney Ramzi Jaber, who simply states that "the Jordanian Court acknowledges the theory of apparent agency to prove liability" and lists as one example "cases in Jordan where the Jordanian Courts find the hospital liable for the wrongful action of the doctor regardless whether the doctor is an employee of the hospital or not because Jordanian citizens go to the hospital based on reputation . . . ."[8]  ECF No. 175-1 ¶12.  But Jaber's bare-bones description lacks sufficient detail for the Court to determine

---

[7]    Defendants further argue that Plaintiffs should be bound by their allegation in the First Amended Complaint that "[i]n Jordan, there is no cause of action against a principal for the negligence of an agent under the theory of ostensible agency."  *See* First Am. Comp., ECF No. 21 ¶9(e)(v).  However, the determination of Jordanian law is a question of law for this Court to determine based on any relevant source.  *See* Fed. R. Civ. P. 44.1. Legal conclusions in the parties' pleadings are not binding on this Court.  *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8]    Plaintiffs also cite to a declaration of Jordanian attorney Yazid Salah for the proposition that Jordan recognizes a theory of apparent authority.  However, a thorough reading of Dr. Yazid's declaration does not reveal any reference to a theory of apparent or ostensible authority at all.  *See* ECF No. 170-2.  Indeed, Dr. Yazid's declaration confirms that Jordanian law is limited to the text of the civil code.  *See id.* at 6 ("The Judge in Jordan does not make laws and his power restricts to enforcing them.").

whether such decisions were truly based on a theory of apparent authority.  And Jaber

provides no citation to or translation of any Jordanian court rulings from which the Court

could make such a determination.

Based on all relevant sources before it, the Court concludes that Jordanian law

does not recognize the concept of apparent authority and, thus, conflicts with Missouri

law on this issue.  The Court must therefore engage in a choice-of-law analysis.  The

parties have not cited and the Court has not found caselaw applying Missouri's choice-of-

law rules to the particular issue of a defendant's vicarious liability under the doctrine of

apparent authority.[9]  Therefore, the Court again turns to the Restatement to predict how

the Missouri Supreme Court would rule on this issue.

---

[9]      In their reply brief, Plaintiffs briefly allude to Defendants' website.  Specifically,
Plaintiffs state that "at the time of the injury, Defendants own website stated that any
litigation shall be litigated in Missouri under United States law."  ECF No. 175 at 12.
Plaintiffs then cite to a screenshot of a Hardee's website attached as an exhibit to
Plaintiffs' brief.  *See* ECF No. 175-3.  The screenshot is cut off so that only part of the
text is visible.  The top of the screenshot states: "Please carefully read below terms and
conditions applicable to Hardee's® website . . . . to these terms and conditions."  *Id.* at 2
(omitted portion is not visible in screenshot).  The screenshot then lists various terms and
conditions, paragraph 6 of which is titled "Jurisdiction" and states: "these terms and
conditions shall be construed and interpreted according to the laws . . . United States of
America, without regard to the conflict of law principles or rules. . . ."  *Id.* at 4 (omitted
portion is not visible).  Plaintiffs do not assert, and this Court would not accept, that
paragraph 6 is an effective contractual choice of law that would control the choice-of-law
issues in this case.  *Cf.* Restatement § 187 (discussing how the choice-of-law rules apply
when the parties expressly state that a particular state's law will govern their contract).
By its express terms (to the extent visible in the screenshot), the website's terms,
including the choice of law, apply only to disputes arising from use of the website.
Nothing in the record before the Court suggests that this lawsuit relates to the referenced
website.

Section 174 of the Restatement applies to the choice of law for issues regarding vicarious liability and directs courts to § 145, which as noted above, points to the state that has the "most significant relationship to the occurrence and the parties" with respect to the particular issue.  On balance, the four factors listed under § 145 and the broader policy principles stated in § 6 favor application of Jordanian law on the issue of whether to recognize a theory of apparent authority.

Jordan was the place where the injury occurred and the place where the relationship between the parties here was centered.  Although part of the allegedly tortious conduct may have taken place in Missouri, as discussed above, part also took place in Jordan, where the faulty playground equipment was located and where inspections allegedly should have been but were not adequately conducted.  Jordan is also the place where Plaintiffs and decedent interacted with the alleged agent (the Jordanian restaurant) and perceived all of Defendants' alleged manifestations of authority (e.g., the restaurant logo and uniforms).

And application of Jordanian law would not offend the principles outlined in § 6. The Court finds no supporting precedent and discerns no special interest that Missouri would have in favoring its theory of apparent agency over Jordan's preference that no person be held liable for the acts of another outside of specifically enumerated exceptions which do not encompass apparent agency.  *See Carris v. Marriott Int'l, Inc*., 466 F.3d 558 (7th Cir. 2006) (holding that the law of the Bahamas governed the issue of whether the apparent authority doctrine could support liability and that application of Bahamian

17

law's rejection of the doctrine over conflicting Illinois law did not offend any public policy of Illinois supporting the doctrine).

Accordingly, with respect to Count II, the issue of whether Defendants may be held vicariously liable on the ground of apparent authority will be governed by Jordanian law.  As Jordanian law does not recognize a theory of apparent agency, Count II may be subject to dismissal or judgment as a matter of law on an appropriate motion.

**Count III ("Strict Liability for Breach of Warranty")**

In Count III, Plaintiffs assert a claim alleging "strict liability for breach of warranty," based on Defendants' alleged actions in placing a defective product (the playground structure) within the stream of commerce.  ECF No. 21 at 21.  The parties agree that Missouri recognizes such a cause of action and that the cause of action requires proof of the following elements:

> (1) [the] defendant sold the product in the course of its business;
> (2) the product was then in a defective condition unreasonably dangerous when put into a reasonably anticipated use;
> (3) the product was used in a manner reasonably anticipated;
> (4) [the] plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

*Pree v. Brunswick Corp.*, 983 F.2d 863, 865 (8th Cir. 1993) (discussing Missouri law).

Again, the parties dispute whether Jordan recognizes such a cause of action. Plaintiffs argue that Article 256 of the Jordanian Civil Code imposes liability for injury regardless of the intention of the defendant.  *See* ECF No. 170 at 8.  But Plaintiffs admit that they were "unable to obtain a declaration from any Jordanian lawyer to explain the theory of liability versus strict liability" and state that, if the Court "finds that Jordan does

18

not have strict liability, the Plaintiffs have no objection to dismissing [Count III]."   ECF No. 175 at 8.

Defendants cite to the declarations of Malkawi and another Jordanian litigator to argue that Jordanian law does not recognize a cause of action for strict liability in this context.[10]  ECF No. 174 at 6.   Defendants assert that the Court should resolve the conflict of law in favor of applying Jordanian law. Defendants' arguments are again more persuasive.

Plaintiffs' own proffered expert, Salah, describes Article 256 in terms of "negligence" and states that the provision requires a "tortious act."  ECF No. 170-2 at 6. And the declarations proffered by Defendants persuade the Court that Jordanian law does not recognize a cause of action for strict liability in tort for a defective product design or breach of warranty.

Thus, the laws of Missouri and Jordan conflict on this issue.  The Court again looks to the Restatement to predict how the Missouri Supreme Court would resolve this conflict.  Unlike punitive damages, the sole purpose of which is to punish the wrongdoer, Missouri's strict liability scheme serves the state's interests in not only deterring unsafe product design but also ensuring that "the injured party receive adequate compensation and not become a ward of the state." *In re Disaster at Detroit Metro. Airport on Aug. 16,*

---

[10]    Defendants also again refer to Plaintiffs' First Amended Complaint, which pled that "in Jordan, there is no cause of action for strict liability from breach of warranty" as somehow binding on Plaintiffs.   First Am. Comp., ECF No. 21 at ¶9(e)(vi).  As noted above, the determination of Jordanian law is a question for this Court, and the Court is not bound by legal conclusions in the pleadings.

*1987*, 750 F. Supp. 793, 801 (E.D. Mich. 1989) (discussing Missouri law); *see also Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969) ("The purpose of such [strict] liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers (and sellers) that put such products on the market rather than by the injured persons who are powerless to protect themselves.")

Missouri's interest in compensating its own injured citizens would not be promoted by applying Missouri law to the instant strict liability claim.  Plaintiffs and the decedent are citizens of Jordan, and Jordan is where the parties' relationship was centered.  Missouri's interests in providing compensation to an overseas resident are at best *de minimis*, and its secondary interest in deterring unsafe product design is not so strong as to overcome the presumption that the law of the place of injury controls.  *See, e.g.*, *In re Derailment Cases*, 416 F.3d 787, 794-95 (8th Cir. 2005) (applying the most-significant-relationship test to hold that Nebraska law applied to strict liability claims arising out of train derailment where, although the railroad cars were inspected in Montana by Montana and Delaware railroad companies, the derailment and injuries occurred in Nebraska, and the only relationship between the parties derived from the derailment, which occurred in Nebraska).

Rather, Jordan has the "the greater governmental interest, because it has the prerogative of regulating conduct within its borders." *Alumbaugh v. Union Pac. R. Co.*, 322 F.3d 520, 524 (8th Cir. 2003) (holding under Missouri's choice-of-law rules that the law of the place where the injury occurred and parties' relationship centered governed the plaintiff's breach of warranty product liability claims).  While part of the injury-causing

conduct here (the allegedly defective design of the playground) occurred in Missouri, as noted above, a significant part also occurred in Jordan (the allegedly faulty or absent inspection of the playground).

Consequently, the law of Jordan must apply with respect to Count III. Because the Court has determined that Jordanian law does not allow for a strict liability claim in this context, and Plaintiffs have represented they would not object to dismissal upon such a finding, Count III will be dismissed on an appropriate motion.[11]

**Preclusive Effect of Jordanian Criminal Proceedings**

Defendants have advised the Court that Jordanian authorities instituted criminal proceedings against Tourism Projects (the owner of the Jordanian restaurant) and its local manager. Defendants further note that these parties were convicted in a Jordanian criminal court and the conviction was affirmed by a Jordanian appellate court. ECF No. 174-1 ¶ 40. According to Defendants' proffered expert, Malkawi, such criminal judgments may be binding on parallel or subsequent civil litigation. *Id.* ¶ 44.

However, Defendants have not thus far identified any particular findings of the Jordanian criminal court that they believe should have binding effect or otherwise impact this litigation. Tourism Projects and its employees are not named defendants here, and none of the named Defendants in this action was prosecuted by Jordanian authorities. Defendants' speculation that "the application of Jordan law could mean that some facts determined in the criminal proceeding should be given preclusive effect" (ECF No. 174

---

[11]     Plaintiffs have indicated that they would not object to such a motion upon a finding that Jordanian law does not permit strict liabilty.

at 8) is far from clear and, at least at this stage, does not require a choice-of-law analysis. If and when the parties wish to raise a preclusion argument and any accompanying choice-of-law issues, they may do so in a properly supported motion.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to apply Missouri law with respect to all issues is **GRANTED in part and DENIED in part**.  ECF No. 169.  As set forth above, no conflict exists as to the issues of liability and compensatory damages under Count I; Missouri law will govern the issue of punitive damages under Count I; and Jordanian law will govern the issue of liability under Counts II and III.  Because Jordanian law does not recognize the causes of actions under Counts II and III, these Counts may be subject to dismissal or judgment as a matter of law on an appropriate motion.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2021.