UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AHMAD HERSH, et al.,                              )
                                                  )
                    Plaintiffs,                   )
                                                  )
          vs.                                     )        Case No. 4:17-cv-02043-AGF
                                                  )
CKE RESTAURANT HOLDINGS,                          )
INC., et al.,                                     )
                                                  )
                    Defendants.                   )

## MEMORANDUM AND ORDER

This lawsuit stems from the tragic death of Plaintiffs' minor child, I.E. Hersh, at a

Hardee's restaurant franchise located on Al-Medina Street[1] in Amman, Jordan ("Al-

Medina Street Restaurant").  The child died after he touched an exposed, electrified wire

while playing on the restaurant's indoor playground.  According to Defendants, the Al-

Medina Street Restaurant was owned by Tourist Projects and International Restaurants

Co. L.L.C. ("Tourist Projects"), a company formed by Kuwait Food Company S.A.K.

(Americana) ("KFC Americana) pursuant to an international license agreement with

Hardee's Restaurants, LLC ("Hardee's Restaurants") and Hardee's Food Systems, LLC

("Hardee's Food Systems").

---

[1]     Plaintiffs refer to this street using two different names: Al-Medina Street and
Madina Munawara Street.  *Compare* ECF No. 208, Pls.' Resp. to Defs.' Statement of
Facts, at ¶ 4, *with id.* ¶ 8.  For consistency, the Court will refer to the street only as Al-
Medina Street.

Plaintiffs filed suit in this Court against these two Hardee's companies and their parent company, CKE Restaurants Holding, Inc. ("CKE").  Invoking the Court's diversity jurisdiction, Plaintiffs assert three claims: "wrongful death – negligence" (Count I), alleging theories of direct negligence and vicarious liability; "wrongful death – negligence – apparent agency" (Count II), alleging vicarious liability based on apparent authority; and "wrongful death – strict liability for breach of warranty" (Count III), alleging that Defendants placed a defective and unreasonably dangerous product (the playground equipment and surrounding structures) into the stream of commerce.[2]

Following briefing on a motion for determination of the choice of law,[3] the Court previously found that, with respect to Count I, no conflict existed between the laws of Missouri and Jordan on issues regarding liability.[4]  ECF No. 188.  However, with respect to Counts II and III, the Court found that a conflict existed between the laws of Missouri and Jordan regarding whether apparent authority or strict products liability are grounds for tort liability.  Applying the most-significant-relationship test to these issues, the Court

---

[2]     Although Plaintiffs include the phrase "breach of warranty" in Count III, they have not explained the basis for such a claim.  Rather, their complaint and briefs discuss Count III in terms of products liability for placing a defective product into the stream of commerce. *See* ECF No. 21.

[3]     The undersigned ordered the parties to brief the choice of law after the case was reassigned to her in July of 2021, following remand from the Eighth Circuit and the recusal of another judge of this Court.

[4]     The Court found that a conflict did exist regarding punitive damages under Count I, and applying Missouri's most-significant-relationship test to this issue, the Court found that Missouri law permitting punitive damages controlled.  ECF No. 188.

found that Jordanian law controlled and that Jordanian law did not recognize apparent authority or strict products liability as grounds for tort liability.  *Id.*

The matter is now before the Court on several related motions: (1) Defendants' motion for summary judgment (ECF No. 183), which was filed before the Court issued the above-noted ruling on the choice of law; (2) Defendants' alternative motion for judgment on the pleadings or to dismiss Counts II and III based on the Court's ruling on the choice of law (ECF No. 190); and (3) Plaintiffs' motion for reconsideration of the Court's ruling on the choice of law (ECF No. 193).  Plaintiffs have also filed motions (ECF Nos. 201 & 217) to strike several declarations attached to Defendants' summary judgment motion and to strike Defendants' reply brief in support of that motion.

Although Plaintiffs requested oral argument, in light of the extensive briefing submitted on these issues—including several briefs consisting of more than three times the page limit ordinarily permitted by the Court—oral argument is unnecessary.  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment; dismiss Defendants' alternative motion as moot; and deny Plaintiffs' motions.

## BACKGROUND

### Motions to Strike and Requests for Admission ("RFAs")

Because Plaintiffs' motions to strike impact the facts on which the Court's analysis is based, the Court will discuss those motions first.  Further, in opposing summary judgment, Plaintiffs rely on Defendants' response to their RFAs.   Plaintiffs contend that the matters contained in their RFAs should be deemed admitted under Rule

36(a)(3).  For the reasons set forth below, the Court will deny both motions to strike and will deny Plaintiffs' request to deem the matters contained in the RFAs as admitted.

I.    Motion to Strike Declarations (ECF No. 201)

Plaintiffs seek to strike the sworn declarations of Defendants' designated corporate representative, Michael Woida, and of three individuals in Jordan, Majdi Milhem, Maher Da'da', and Khalil Sudqi.  *See* ECF No. 201.  Milhem is the financial manager and general director for Tourist Projects and has been since 2017.  Da'da' was the general manager for Tourist Projects from December 1, 2012 to December 31, 2015.  Sudqi is the owner of the construction company that constructed the Al-Medina Street Restaurant pursuant to a contract with Tourist Projects.

Plaintiffs argue that Woida's declaration should be stricken for lack of personal knowledge because Woida admitted that he did not draft the declaration and that the declaration was instead drafted by his attorneys for his review and signature.  Plaintiffs argue that Milhem's, Da'da's, and Sudqi's declarations should be stricken because Defendants delayed disclosing these witnesses until September 1, 2021; the declarations themselves are self-serving or sham affidavits; and the declarations contradict deposition testimony and otherwise contain inadmissible hearsay or irrelevant information.

The Court has carefully reviewed the record, and it rejects each of Plaintiffs' arguments.  A review of Woida's deposition and declaration makes clear that the declaration was based on Woida's personal knowledge by virtue of his position as the Senior Vice President of the International Division of CKE.  The mere fact that the declaration was drafted by attorneys for Woida's review and signature does not mean that

4

the statements contained therein were untrue or outside the scope of Woida's personal knowledge.  *See, e.g.*, *Norton v. Gen. Motors LLC*, No. 4:19-CV-00329-SAL, 2020 WL 4218232, at *3 n.1 (D.S.C. July 23, 2020) ("The weight of the case law is that it is a common and acceptable practice for counsel to draft witness affidavits.").

Likewise, a review of Milhem's, Da'da's, and Sudqi's declarations convinces the Court that these declarations comply with Rule 56(c)(4)'s requirements that they "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  These witnesses were disclosed as part of Defendants' supplemental disclosures, pursuant to Federal Rule of Civil Procedure 26(e), and prior to the close of discovery as set forth in this Court's Amended Case Management Order (ECF No. 168).  Further, the witnesses were disclosed before depositions of fact witnesses occurred in this case.  Plaintiffs had time to depose these witnesses had they wished to do so.  Thus, any delay in disclosure was harmless.  *See, e.g.*, *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (describing the district court's wide discretion in fashioning a remedy for violation of Rule 26(a) or (e), and noting that the "harsh penalty" of exclusion "should be used sparingly" and is not warranted when failure is substantially justified or harmless).

II.    <u>Motion to Strike Reply Brief (ECF No. 217)</u>

Plaintiffs also move to strike Defendants' reply brief in support of their summary judgment motion.  Plaintiffs argue that the reply brief contains misleading arguments and that Defendants improperly refer to an errata sheet for Woida's deposition transcript when Defendants never disclosed that errata sheet to Plaintiffs.  The errata sheet related

to Woida's response to a question about Defendants' involvement in the design of the Al-Medina Street Restaurant playground; Woida's testimony on this issue is discussed in more detail below.

Upon careful review, the Court will deny Plaintiffs' motion.  The Court is well equipped to analyze the issues raised by the summary judgment motion and finds nothing misleading about Defendants' reply brief and certainly nothing warranting striking under Rule 12(f).  Regarding Woida's deposition, as the Court explains below, the statement relied upon Plaintiffs, read in context, does not weigh in Plaintiffs' favor regardless of whether the Court considers the errata sheet.

Because the motions to strike will be denied, to the extent that Plaintiffs have disputed Defendants' properly supported statements of material facts based on their argument that one or more of the above-noted declarations should be stricken, without more, the Court has deemed such facts to be admitted.  *See* Fed. R. Civ. P. 56(c), (e); E.D. Mo. L.R. 4.01(E).

III.     Defendants' Response to Plaintiffs' RFAs

Under Rule 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the [RFA] is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  While Plaintiffs do not dispute that Defendants served a timely written response to their RFAs, Plaintiffs contend that the response was not signed. Rather, Plaintiffs contend that only the certificate of service included at the end of the response was signed.  *See* ECF No. 208-5, Pls.' Ex. E at 11.

6

Plaintiffs have not cited and the Court has not found any authority for the proposition that a single signature on a document containing both the discovery response and the certificate of service fails to satisfy Rule 36.  Moreover, Plaintiffs have never filed a motion to deem the response insufficient or to deem the matters therein admitted, instead merely raising this issue in its summary judgment response.  Had Plaintiffs brought a timely motion, the Court would have permitted Defendants to promptly file an amended response.  *See* Fed. R. Civ. P. 36(a)(3), 36(a)(6) (noting the court's discretion to lengthen time for responding and to order an amended answer to be served on finding noncompliance); *see also* Fed. R. Civ. P. 26(g)(2) ("Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it *unless a signature is promptly supplied after the omission is called to the attorney's or party's attention*.") (emphasis added).

In any event, assuming without deciding that Defendants' single signature on their response was insufficient, the Court declines to impose the extreme sanction of deeming the statements admitted.  *See Midfirst Tr. Co. v. Estes Exp. Lines*, No. CIV-11-42-C, 2012 WL 2026877, at *1 (W.D. Okla. June 5, 2012) ("As for the failure to affix a signature to the requests for admissions, the Court is not inclined to extend the extreme sanction of deeming requests admitted based solely on an oversight . . . of counsel.").

Having resolved the motions to strike and Plaintiffs' arguments regarding the RFAs, the Court now turns to the facts before it on summary judgment.  Viewing the

evidence and all reasonable inferences in the light most favorable to Plaintiffs for purpose of summary judgment, the record establishes the following.[5]

**Defendants' Relationship with Each Other and the Al-Medina Street Restaurant**

CKE is the parent company for a number of restaurant brands, including Hardee's. CKE has no direct license agreements with franchisees.  Hardee's Food Systems, which is wholly owned by CKE, provides management services for the Hardee's brand.

Hardee's Restaurants, also owned by CKE, is the current franchisor for Hardee's restaurant franchises in the United States and abroad.  For Hardee's restaurants in the Middle East, Hardee's Restaurants contracts with KFC Americana, a franchise developer located in Dubai.  KFC Americana owns and operates approximately 395 Hardee's restaurant franchises in the Middle East, in addition to numerous other restaurant franchises under different brands.

When it opens a Hardee's restaurant franchise, KFC Americana forms and maintains a local operating company, which then enters into a license agreement with Hardee's Restaurants to operate as a Hardee's franchisee.

I.     Applicable License Agreements for Al-Medina Street Restaurant

As noted above, Defendants have produced evidence that the local operating company and franchisee in this case was Tourist Projects, formed by KFC Americana.

---

[5]     To the extent that Plaintiffs have denied any of Defendants' properly supported statements of uncontroverted material facts based solely on the statement's purported irrelevance, lack of context, or Plaintiffs' lack of sufficient personal knowledge, without more, the Court has deemed such facts to be admitted to the extent supported by the record.  *See* Fed. R. Civ. P. 56(c), (e); E.D.Mo. L.R. 4.01(E).

However, Plaintiffs argue that there is a dispute of fact as to whether Defendants have produced the correct license agreements for the Al-Medina Street Restaurant.

In support of their argument, Plaintiffs note that one of the license agreements produced by Defendants, titled "Hardee's Food Systems, Inc. International License Agreement," dated April 14, 2006 ("2006 License Agreement"), does not contain the correct address for the Al-Medina Street Restaurant.  The 2006 License Agreement states that it is an agreement between Hardee's Food Systems, Inc. and KFC Americana, and it references the following "[l]ocation of the licensed restaurant":

> #1505518/1743002
> Amman #2
> *Elia Abu Madi St. Shymeisani*
> Amman, Jordan

ECF No. 186-11, Defs.' Ex. K, 2006 License Agreement, at 2, 40 (emphasis added).

Because this address does not reference Al-Medina Street, Plaintiffs suggest that the 2006 License Agreement does not govern the Al-Medina Street Restaurant.[6] Plaintiffs thus contend that there is a material question of fact as to whether the Al-Medina Street Restaurant is subject to any license agreement or whether the restaurant is instead directly owned by Defendants.[7]

---

[6]     Defendants contend that the "Elia Abu Madi St. Shymeisani" address is the corporate address for Tourist Projects.  *See* ECF No. 186-3, Defs.' Ex. C, at 5 (license agreement between Hardee's Restaurants and Tourist Projects, listing address for Tourist Projects' principal offices as "Shmeisani, 28 Ellia Abu Maddy Street" in Amman).

[7]     Plaintiffs point to Woida's deposition testimony that 93% of Hardee's restaurants are owned by franchisees to argue that approximately 7% of such restaurants must be owned by Defendants directly, rather than subject to any franchise or license agreement. *See* ECF No. 208, Pls.' Statement of Facts, at ¶ 55.

9

Notwithstanding the street-name discrepancy, Plaintiffs have not disputed that the restaurant number referenced in the 2006 License Agreement, #1505518/1743002, is the restaurant number for the Al-Medina Street Restaurant.  *See* ECF No. 186-10, Defs.' Ex. J at 2.  In addition, Woida, Milhem, and Sudqi have all provided sworn declarations attesting that the Al-Medina Street Restaurant was owned by Tourist Projects, built pursuant to a contract with Tourist Projects, and on land rented by Tourist Projects. ECF Nos. 186-1, 186-13 & 186-15.  As noted above, the Court will not strike these affidavits, and they have been considered by the Court.

II.    <u>License Agreements Produced by Defendants</u>

The 2006 License Agreement required that the licensee submit to Hardee's Food Systems for approval the site plan and layout for the licensee's restaurant, the name of an architect and contractor, and certification that all necessary permits and requirements for construction and operation have been met.  *See* ECF No. 186-11, Defs.' Ex. K, 2006 License Agreement, at § V.

Prior to the Al-Medina Street Restaurant's construction, KFC Americana submitted a site plan and construction plan drawings to Hardee's Restaurants for review, and CKE approved these plans.  The plans included an open space for a playground but did not otherwise include specifications for the playground.  Woida testified that playgrounds are not a standard feature of Hardee's restaurant franchises, but franchisees may include a playground at their option and must disclose to the franchisor whether they will have a playground and the square footage of such playground.

In 2005, Tourist Projects awarded a contract to a Jordanian company, owned by Sudqi, to construct the Al-Medina Street Restaurant on land rented by Tourist Projects. Sudqi's company constructed the Al-Medina Street Restaurant, including all interior electrical work, pursuant to its contract with Tourist Projects. The playground was built was part of this initial restaurant construction. The Al-Medina Street Restaurant opened in 2006.

Hardee's Restaurants thereafter entered into a subsequent "Hardee's Country License Agreement for Jordan" with Tourist Projects dated November 1, 2013 ("2013 License Agreement"), which Defendants maintain is the most current license agreement for the Al-Medina Street Restaurant and the agreement applicable to the relevant events here, which occurred in 2015. *See* ECF No. 186-3, Defs.' Ex. C.

The 2006 and 2013 License Agreements (together, "License Agreements") give Hardee's Food Systems or Hardee's Restaurants the right to conduct periodic inspections, the ability to enter the premises to conduct such inspections, and the right to immediately terminate a licensee's right to operate any licensed restaurant upon written notice and without opportunity to cure if Hardee's Restaurants makes a reasonable determination that continued operation of the licensed restaurant by the licensee will result in imminent danger to public health or safety. *See* ECF No. 186-3, Defs.' Ex. C, 2013 License Agreement, at ¶ ¶ 14, 20.2(b)). Defendants could not locate any inspection report for the Al-Medina Street Restaurant from 2015, the relevant year here.

The License Agreements state that the licensee is an independent contractor and that no agency, joint venture, partnership, employment, or fiduciary relationship exists

11

between it and the licensor  ECF No. 186-11, Defs.' Ex. K, 2006 License Agreement at §

XV(A); ECF No. 186-3, Defs.' Ex. C 2013 License Agreement, at ¶ 24.  The Agreements

further provide that the licensee shall hold himself out to the public to be an independent

contractor and shall display a "prominent sign posted in the public area . . . clearly

indicat[ing] Licensee's independent ownership of and responsibility for the operation of

each Licensed Restaurant . . . ."  *See* ECF No. 186-11, Defs.' Ex. K, 2006 License

Agreement at § XV(B); ECF No. 186-3, Defs.' Ex. C, 2013 License Agreement, at ¶

24.3.  Notwithstanding the requirements of the License Agreements, the Al-Medina

Street Restaurant did not advertise that it was independently owned.

The License Agreements also set forth requirements for training by Hardee's

Restaurants, including required training for the restaurant manager; for the licensee to

have an English-speaking manager or other English-speaking employee assigned to the

restaurant; and for the restaurant to comply with Hardee's performance standards as set

forth in Hardee's Food Systems' International Operations Manual ("Operations

Manual").  ECF No. 186-11, Defs.' Ex. K, 2006 License Agreement at § V; ECF No.

186-3, Defs.' Ex. C, 2013 License Agreement at ¶ 15.

III.    <u>Operations Manual</u>

The Operations Manual likewise provides that it must be used "to ensure

acceptable compliance with Hardee's Food Systems standards and/or license

agreements."  ECF No. 208-2, Pls.' Ex. B, at 7.  The manual is not specific to the Al-

Medina Street Restaurant but provides standards for restaurant operations across the

Hardee's brand.  The standards cover a wide range of restaurant operations, including

12

quality control, receiving and storage, food handling and safety, cleaning and maintenance, guest service, and food preparation.  *See id*.

As part of its "Cleaning and Sanitation Standards," the Operations Manual lists activities to be conducted throughout all areas of the restaurant prior to closing.  With respect to restaurant playgrounds, the pre-closing list requires cleaning and sweeping; "Check[ing] playground equipment for overall cleanliness, wear, or damage"; and "Notify[ing] Manager-On-Duty (MOD) if playground is unsafe for Guests."  *Id.* at 87.

IV.   Playground Design and Construction

Defendants have provided evidence in the form of sworn declarations and deposition testimony that Defendants were not involved in the design, construction, or maintenance of the playground and surrounding structures in the Al-Medina Street Restaurant.  In disputing this fact, Plaintiffs rely heavily on an exchange in Woida's deposition.  The exchange is the subject of Defendants' errata sheet and Plaintiffs' motion to strike discussed above.

Specifically, Plaintiffs rely on Woida's testimony in response to questioning about a letter from an individual named Nabil Kassem to an individual named "Mr. Ravi," regarding drawings of the "Hardee's Al-Madina" restaurant.  *See* ECF No. 186-5, Defs.' Ex. E.  The only information in the record about this letter comes from the letter itself and Woida's testimony.

In the letter, Kassem requests nine changes with respect to the drawings.  *See* ECF No. 186-5, Defs.' Ex. E.  The ninth and last requested change is: "Reducing the size of

13

the play ground to become 5m X 6m instead of 5m X 7." *Id.*  Plaintiffs' counsel

questioned Woida about this letter as follows:

> Q: I would direct your attention to #9, if you could read that.
>
> A: Reducing the size of the playground to become 5 by 6 instead of 5 by 7.
>
> Q: So, that's very specific to the design of the playground, correct?
>
> A: Yes.
>
> Q: So, that would mean that Hardee's was actually involved in designing the specifications of this particular playground, correct?
>
> A: Correct.[8]
>
> Q: Well, isn't it making a demand or a change to the design of the playground?
>
> A: No. This exchange is between two Americana employees.
>
> Q So, why is it included in the file produced by Hardee's? Why would they have this?
>
> A I think, we were copied on it and it was to allow the general manager at the time or Director of Operations at the time aware of some of the changes they wanted to make  . . . . So, they were making changes between the two of them. Mr. Ravi and Nabil, whatever his name was, yes; this was between the two of them. They must have -- I don't know that this document -- I don't believe that this document was included in the  site proposal. I think, it was a document that was filed in the folder as they, you know, began moving forward with the final plan of the restaurant and they were -- they provided us a copy. Mr. Ravi --  Mr. Ravi was there, was Americana's in-house architect.

ECF No. 208-1, Woida dep. at 124:23-126:7.

---

[8]     Defendants' errata sheet notes that the response to this question should have been "incorrect" instead of "correct."  *Compare* ECF No. 208-1, Woida dep. at 124:23-125:11 (emphasis added), *with* ECF No. 215-1.  However, as noted above, the Court need not and has not considered the errata sheet in its analysis.

**Plaintiffs' Visit to Al-Medina Street Restaurant**

On July 20, 2015, Plaintiffs took their children to eat at the Al-Medina Street Restaurant.  Plaintiffs visited the restaurant based on the reputation of the Hardee's brand, including its reputation for safety.  While they were at the restaurant, Plaintiffs' five-year-old son, I.E., visited the restaurant's playground, where he apparently touched something that was electrified and that was hanging from the ceiling above or otherwise accessible to the playground.  I.E. was electrocuted and died.  Plaintiffs did not see how the accident happened.  Following the child's death, Jordanian officials investigated the accident and brought criminal charges against two Tourist Projects employees, Mohammad Munir Mohammad and Mutasem Al Dun.

**Lawsuit in this Court**

Plaintiffs filed suit on July 20, 2017.  As noted above, Plaintiffs assert three causes of action against all Defendants, (I) wrongful death based on direct negligence and vicarious liability, (II) wrongful death based on vicarious liability under a theory of apparent authority; and (III) wrongful death based on "strict liability for breach of warranty."  ECF No. 21.  The case was initially assigned to another judge, who dismissed the case without prejudice under the doctrine of forum non conveniens.  ECF No. 137. On appeal, the Eighth Circuit found that Defendants' motion to dismiss was untimely, and therefore reversed the dismissal and remanded the case for further proceedings.  The original judge thereafter granted Plaintiffs' motion for recusal, and the case was reassigned to the undersigned on July 6, 2021.

Following a status conference, the undersigned entered an Amended Case Management Order (168), setting deadlines for the completion of discovery and the briefing of motions for determination of the choice-of-law and for summary judgment, which the parties thereafter filed.  Defendants filed the current motion for summary judgment before the Court issued its choice-of-law ruling.  Defendants therefore argue in that motion that summary judgment is warranted on each claim under either Jordanian or Missouri law.  *See* ECF No. 185.

In their summary judgment motion, Defendants argue that CKE and Hardee's Food Systems are not proper parties to this action because they, unlike Hardee's Restaurants, have no connection to the Al-Medina Street Restaurant.  In any event, Defendants argue that Count I is subject to summary judgment under Missouri or Jordanian law because Plaintiffs have no facts suggesting that Defendants maintained control over the day-to-day operations of the Al-Medina Street Restaurant, as required to establish vicarious liability or direct negligence.

As to Count II, Defendants argue that Plaintiffs have failed to establish vicarious liability based on apparent authority as a matter of Missouri law and that apparent authority is not recognized as a basis for vicarious liability under Jordanian law. Regarding Count III, Defendants argue that Plaintiffs cannot establish a "strict liability— breach of warranty" claim under Missouri law because they lack evidence that Defendants sold or manufactured the allegedly defective playground equipment and because Plaintiffs lack evidence of an actual defect.  Defendants further argue that Count III fails under Jordanian law, which does not recognize such a cause of action.

16

As noted above, the Court issued its ruling on the choice of law on November 12, 2021, finding that no conflict existed as to liability on Count I between Missouri and Jordanian law; but that Counts II and III were subject to Jordanian law, which did not recognize the causes of action stated.  ECF No. 188.  Following the Court's choice-of-law ruling, Defendants filed an alternative motion to dismiss Counts II and III based on the Court's findings with respect to Jordanian law.

Plaintiffs oppose Defendants' motion for summary judgment on Counts I and II, and they have also moved for reconsideration of the Court's choice-of-law ruling.   The parties elected to brief the motions for summary judgment and for reconsideration simultaneously.

Regarding Count I, Plaintiffs argue that a question of material fact exists as to whether the Al-Medina Street Restaurant is a franchisee (rather than directly owned by Defendants) in light of the street-name discrepancy on the 2006 License Agreement.  Plaintiffs also argue that a material factual dispute exists as to whether Defendants controlled the day-to-day operations of the Al-Medina Street Restaurant.

As to Count II, Plaintiffs seek reconsideration of the Court's ruling that Jordanian law does not recognize the concept of vicarious liability based on apparent authority and further argue that, if there is a conflict, the Court should apply Missouri law to the issue.  Under Missouri law and in response to Defendants' motion for summary judgment, Plaintiffs argue that a dispute of material fact exists as to whether Plaintiffs can prove the elements of vicarious liability based on apparent authority.

17

Regarding Count III, in their initial motion for reconsideration, Plaintiffs argued that the Court erred in applying Jordanian law to the issue of whether a cause of action exists.  However, Plaintiffs abandoned that argument in their reply brief.  *See* ECF No. 211 (seeking reconsideration only with respect to Count II).  Moreover, Plaintiffs do not assert any argument in opposition to Defendants' motion for summary judgment as to Count III.  *See* ECF No. 209.  Therefore, Plaintiffs appear to concede that summary judgment is warranted on Count III.

## DISCUSSION

### Defendants' Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party."  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan and Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980).  Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy."  *Howard*, 363 F.3d at 800 (citation omitted).  "Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## I.    Direct Negligence or Vicarious Liability Based on Actual Authority (Count I)

Plaintiffs' claims alleging direct negligence and vicarious liability both fail as a matter of law.  As to direct negligence, under Missouri law, [9] which generally follows the Restatement, liability for direct negligence exists only "when a defendant's conduct 'falls below the standard [of care] established by law for the protection of others against unreasonable risk of harm,' and such conduct is the proximate cause of the plaintiffs' injuries." *Harris v. Niehaus,* 857 S.W.2d 222, 225 (Mo.1993) (quoting Restatement (Second) of Torts § 282) (internal citation omitted).  Plaintiffs must first establish that Defendants owed them a duty of care, which is a question of law for the court.  *See Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. 1988).  A duty may arise if the defendant owned the premises alleged to be unsafe or possessed control over its operations.  *See id.*

With respect to vicarious liability over a franchisee's negligence, "[t]he general rules of agency and tort provide adequate guidance . . . ." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 765 (Mo. 1996).  "Two elements are required to establish an agency

---

[9]    Because this is a diversity action, the Court is bound by the decisions of the Missouri Supreme Court and, "where it has not spoken, we must predict how it would rule." *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1061 (8th Cir. 2020) (en banc.) (citation omitted).  "In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data," paying "particular attention to sources cited approvingly by the state's highest court." *Id.* (citations omitted).

relationship: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control." *Bost v. Clark*, 116 S.W.3d 667, 676 (Mo. Ct. App. 2003) (citation omitted). "[T]he touchstone is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act." *Shell Oil Co.,* 922 S.W.2d at 764.

Thus, Defendants' control over the Al-Medina Street Restaurant is essential to proving either direct or vicarious liability. The right to control in this context "must relate to the physical activities of [the Al-Medina Street Restaurant] or to the details of the manner in which the work is done by [that restaurant]." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 385 (Mo. Ct. App. 1999) (citation omitted). "Indeed, the entire purpose of franchise law is to separate the franchisor from the day-to-day running of the actual business, which is the duty of the franchisee." *State ex rel. McDonald's Corp. v. Midkiff*, 226 S.W.3d 119, 125 (Mo. 2007). "At the same time, courts are generally mindful that a franchisor does have a legitimate interest in retaining some degree of control in order to protect the integrity of its marks." *Hunter v. Ramada Worldwide, Inc.*, No. 1:04CV00062ERW, 2005 WL 1490053, at *6 (E.D. Mo. June 23, 2005) (citation omitted).

a. *Applicability of License Agreements*

Plaintiffs devote several pages of their briefs to disputing whether the License Agreements in fact govern the Al-Medina Restaurant. But any dispute of fact on this issue is immaterial. Even if the street name discrepancy in the 2006 License Agreement raised a question as to whether that agreement applies here—and the Court concludes that

20

it does not, in light of the restaurant number identification and overwhelming evidence that Tourist Projects built and owns the Al-Medina Street Restaurant—Defendants have offered sufficient evidence to establish that they do not own or control the daily operations of any Hardee's restaurant franchises in Jordan.  Plaintiffs have not offered any properly supported contrary evidence to create a material question of fact on this issue or the issues of whether Defendants owned the Al-Medina Restaurant in particular or had the right to control its daily operations.  Indeed, the evidence that Plaintiffs have offered to prove Defendants' control comes from the very License Agreements that they question.

b.  *Control as Evidenced by Terms of License Agreements and Operations Manual*

Turning, then, to Plaintiffs' (somewhat contradictory) argument that the terms of License Agreements and Operations Manual give rise to Defendants' liability, the Court concludes that they do not.  The License Agreements expressly state that the licensee is an independent contractor.  Of course, such a contractual disclaimer is not dispositive; an agency relationship would still arise "[i]f a franchise contract so regulates the activities of the franchisee as to vest the franchisor with control within the definition of agency." *Hunter*, 2005 WL 1490053, at *6 (citation omitted).

"However, courts have found that retaining certain rights such as the right to enforce standards, the right to terminate the agreement for failure to meet standards, the right to inspect the premises, the right to require that franchisees undergo certain training, or the mere making of suggestions and recommendations does not amount to sufficient control." *Id.* (collecting cases).  Such reservation of rights "is consistent with [a

franchisor's] legitimate right to ensure the property is in compliance with the system standards and does not provide a basis for finding the existence of an agency relationship." *Id.*, at *7.

Thus, "[t]t is not enough that [the franchisor] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations."   Restatement (Second) of Torts § 414 cmt. c.  "Such a general right is usually reserved to employers, but it does not mean that the [franchisee] is controlled as to his methods of work, or as to operative detail."  *Id.*

The License Agreements and the Operations Manual detailing brand standards include many of the general rights described above that are typical of franchise agreements.  While the agreements detail certain standards to ensure the uniformity and protection of the Hardee's brand, they do not provide Defendants with control over the daily operations of the Al-Medina Street Restaurant.

The agreements do not give Defendants the power to hire or fire restaurant employees,[10] determine their wages or working conditions, or discipline them.  At most,

---

[10]     Plaintiffs point to Paragraph V(D) of the 2006 License Agreement to argue that Defendants retained control to fire the Al-Medina Street Restaurant manager.  However, that paragraph requires the licensee "[t]o have the restaurant's initial manager attend and successfully complete [the Hardee's] training program to [Hardee's] reasonable satisfaction" and provides that  Hardee's "specifically reserves the right to have LICENSEE remove any Manager not satisfactorily operating the subject restaurant, *in LICENSEE'S reasonable opinion,* and to have that Manager's replacement attend and successfully complete the same training program under the same conditions."  ECF No. 186-11, Defs.' Ex. K, at ¶ V(D).  Thus, even this paragraph gives the franchisee, rather than Defendants, control over evaluating the restaurant manager.  Franchise agreements

the agreements reserved to Defendants[11] the right to conduct inspections, require

management training, enforce brand standards, and terminate the agreement upon finding

of noncompliance.

Such a reservation of rights does not provide sufficient control over a franchisee's

operations as to impose direct or vicarious liability.  *See, e.g.*, *Hunter v.*, 2005 WL

1490053, at *6-8 (rejecting similar arguments raised by a plaintiff attempting to hold

hotel franchisor liable under Missouri law for injuries to a guest of a hotel franchise);

*Marchionda*, 359 F. Supp. 3d at 697  (holding under Iowa law, which also follows the

Restatement, that hotel franchisor Hilton's rights and requirements regarding brand

standards, employee training, manager-on-duty standards, inspection, and license

termination did not establish sufficient control to hold Hilton liable for injuries to hotel

franchise guests); *Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 285 n.4 (Mo. Ct. App.

1995) (surveying caselaw for the proposition that "even though a franchisor exercises

control over its franchisees in the form of stringent requirements for operating the

franchise with regard to standards of quality, cleanliness and service, and the monitoring

---

reflecting even more franchisor control over management have been held to be
insufficient to impose vicarious liability.  *See, e.g.*, *Marchionda v. Embassy Suites
Franchise, LLC*, 359 F. Supp. 3d 681, 688 (S.D. Iowa 2018) (rejecting liability as a
matter of law even where the franchisor retained the right to determine in its "sole
judgment" that a franchisee's general manager was unsuitable and to approve or
disapprove the selection of the manager, because the franchisee retained control to select
the manager for approval and the franchisor did not have the right to approve or
disapprove selection of any other positions).

[11]     Although the Court agrees with Defendants that CKE is even farther removed
from liability, the Court need not distinguish between the Defendants in light of its
holding that all are entitled to judgment as a matter of law.

of profitability, such requirements are distinguishable from having actual control over the subject premises."), *overruled on other grounds by Richardson v. QuikTrip Corp.*, 81 S.W.3d 54 (Mo. Ct. App. 2002).

The Operations Manual's specific reference to pre-closing duties with respect to restaurant playgrounds does not change the Court's analysis.  The closing checklist— which is not specific to the Al-Medina Street Restaurant and applies across the Hardee's brand—is simply insufficient to create an issue of fact as to whether Defendants exercised sufficient control over the playground here.  *See Hunter*, 2005 WL 1490053, at *7 (rejecting argument that a hotel franchisor's operations manual requiring that a franchisee "maintain the exterior walkways in a safe condition, with no clutter, and that the swimming pool area and equipment be maintained in a safe condition" was sufficient to establish franchisor's control over the swimming pool and walkway where a hotel guest was injured).

Plaintiffs' reliance on the *Shell Oil* case, *supra*, is also unavailing.  In *Shell Oil*, the Missouri Supreme Court found questions of material fact existed as to whether Shell was liable *as a landlord* over the safety of its lessee's business operations after a gas station patron was abducted and assaulted.  *Shell Oil*, 922 S.W. 2d at 764.  Here, there is no evidence that Defendants owned the land on which the Al-Medina Street Restaurant was located or was acting as a landlord.

Moreover, the court in *Shell Oil* relied on the landlord's detailed guidance with respect to the very acts on which the injured plaintiff's claims were based, including "the details and the manner in which the safety of the premises [was] to be achieved."  *Id.* at

24

763.  In finding that a factual dispute existed as to Shell's right to control its lessee's provision of security, the Missouri court reasoned that "the agreements [at issue] involve[d] far more than a mere reservation of those rights. Shell had extensive rights to regulate and actually did regulate many of the day-to-day activities at the station that are normally considered in the nature of business management, including activities that relate to customer security." *Id.* at 764. Plaintiffs have not offered similar evidence of such detailed requirements from Defendants with respect to the design or safety of the playground equipment and surrounding structures here. *See Hunter*, 2005 WL 1490053, at *7 n.7 (distinguishing *Shell Oil* on similar bases).

     c.  *Control as Evidenced by Woida's Deposition Testimony*

Aside from the License Agreements and Operations Manual, Plaintiffs primarily rely on the above-noted deposition testimony of Woida to prove that Defendants controlled the playground structures.  But no reasonable jury could conclude from Woida's testimony that Defendants were involved in designing, maintaining, or otherwise controlling the safety of the playground structures.  As an initial matter, the document in question refers only to the playground size, not any structures existing thereon or maintenance thereof.  *See* ECF No. 186-5, Defs.' Ex. E.  Further, Woida's testimony makes clear that the letter contains a discussion between two *KFC Americana employees*, not Defendants.  ECF No. 208-1, Woida dep. at 124:23-126:7.

In this respect, Woida's testimony supports Defendants' other evidence that it was KFC Americana and Tourist Projects that controlled the specifications for the Al-Medina Street Restaurant playground.  Plaintiffs have offered no properly supported evidence to

contradict this fact.  In sum, no reasonable jury could conclude on this record that Defendants had actual control or authority over either the Al-Medina Street Restaurant operations in general or the playground in particular.  The Court will therefore grant summary judgment in favor of Defendants on Count I.

II.     Vicarious Liability Based on Apparent Authority (Count II)

Count II is virtually identical to Count I except that it relies on an alternative theory of vicarious liability, based on Defendants' apparent authority over the Al-Medina Street Restaurant.  "Actual authority and apparent authority are two different theories on which an agency relationship may be based." *Aughenbaugh v. Williams*, 569 S.W.3d 514, 522 (Mo. Ct. App. 2018).  "Actual authority relates to the agent's understanding of the principal's intent to give power to the agent to act on the principal's behalf," and that understanding may be based on the principal's expressed intention or implied from the principal's conduct. *Shiplet v. Copeland*, 450 S.W.3d 433, 443 (Mo. Ct. App. 2014) (emphasis in original). "Apparent authority, on the other hand, relates to ***third persons'*** understanding of the principal's intent to give power to the agent to act on the principal's behalf." *Id.* (emphasis in original). "Apparent authority exists where a principal, either by her acts or representations, leads third parties to believe that authority has been given to an agent." *Starr v. Jackson Cty. Prosecuting Att'y*, No. WD 83634, 2021 WL 4156322, at *4 (Mo. Ct. App. Sept. 14, 2021).

Defendants' summary judgment motion reiterates the arguments it raised in its choice-of-law briefs regarding Jordanian law and its applicability.  For the reasons discussed in the Court's choice-of-law ruling, the Court concludes that the issue of

whether Defendants may be held vicariously liable on the ground of apparent authority is

be governed by Jordanian law.  As Jordanian law does not recognize a theory of apparent

agency, Defendants are entitled to judgment as a matter of law on Count II. *See* ECF No.

188.

With respect to Plaintiffs' motion for reconsideration, the Court carefully

considered the arguments raised in Plaintiffs' choice-of-law briefs, in Plaintiffs'

opposition to Defendants' summary judgment motion, and again now in Plaintiffs'

motion for reconsideration.  Nothing in Plaintiffs' current motion changes the Court's

analysis as set forth above and in its ruling on the choice of law.  Therefore, the Court

will deny Plaintiffs' motion for reconsideration.

In any event, even if the Court were to apply Missouri law, as Plaintiffs request,

Defendants would be entitled to summary judgment on Count II.  To establish apparent

authority under Missouri law, a plaintiff "must show: (1) the principal consented or

knowingly permitted the agent to exercise authority; (2) the person relying on such

authority in good faith had reason to believe and actually believed the agent possessed

authority; and (3) the person relying on the authority changed his position and will be

injured if the principal is not bound by the transaction executed by the agent."  *Ritter*,

987 S.W.2d at 386 (citation omitted).  "Apparent authority cannot be established on the

acts of the agent alone."  *Id.*  "The principal must have created an appearance of authority

to be held liable for the acts of the agent." *Id.*

To prove apparent authority here, Plaintiffs rely on the Hardee's name and logo, as

well as the fact that, notwithstanding the requirements of the License Agreements, the Al-

27

Medina Street Restaurant did not advertise its independent ownership. But such failure to advertise its independent ownership is an act (or, rather, an omission) of the franchisee, not of Defendants. And even if Defendants did not enforce the requirement that its franchisees advertise their independent ownership, the record as a whole simply could not reasonably support a finding apparent authority. *See Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1036 (8th Cir. 1998) ("[T]he mere fact that a franchisor's sign appears on a building and the employees within that building wear uniforms bearing the franchisor's logo and insignia does not clothe a franchisee with the apparent power to act on the franchisor's behalf in anything approaching a general way."); *Marchionda*, 359 F. Supp. 3d at 698 (collecting cases for the proposition that displaying the franchisor's trademark and failing to post a sign stating that someone other than the franchisor operates the business do not give rise to an ostensible agency relationship). The Court will grant summary judgment in favor of Defendants on Count II.

III.    Products Liability (Count III)

For the reasons discussed in the Court's choice-of-law ruling, and reiterated in Defendants' summary judgment motion, the Court concludes that Jordanian law applies and does not recognize the cause of action stated in Count III. *See* ECF No. 188. Plaintiffs abandoned their arguments to reconsider the Court's choice-of-law ruling on Count III and also have not opposed Defendants' arguments in support of summary judgment on Count III. Thus, the Court concludes that summary judgment is warranted on Count III based on the Court's choice-of-law ruling and the reasons set forth in

28

Defendants' summary judgment motion, including the complete lack of evidence that Defendants manufactured or sold the allegedly defective playground equipment.

**Defendants' Alternative Motion**

Because the Court finds that Defendants are entitled to summary judgment on all counts for the reasons stated above, the Court need not reach Defendants' alternative motion for judgment on the pleadings or to dismiss Counts II and III, which raises many of the same arguments.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**.  ECF No. 183.

**IT IS FURTHER ORDERED** that Defendants' alternative motion for judgment on the pleadings or to dismiss Counts II and III is **DISMISSED as moot**.  ECF No. 190.

**IT IS FURTHER ORDERED** that Plaintiffs' motions to strike and for reconsideration are both **DENIED**.  ECF Nos. 193, 201 & 217.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of February, 2022.